# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

**WILLIE Y. FIELDING**　　　　　*　　**DOCKET NO.  07-0380**

**VERSUS**　　　　　　　　　　　*　　**JUDGE HICKS**

**MICHAEL J. ASTRUE,**　　　　　*　　**MAGISTRATE JUDGE HAYES**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION**

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Willie Y. Fielding filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments on July 22, 2005.  (Tr. 64-66, 323-324).[1]  He alleged disability since December 1, 2000, due to a left knee injury and related surgery (Tr. 64, 80-81).  The claims were denied at the initial stage of the administrative process.  (Tr. 38, 51-54, 322).  Thereafter, Fielding requested, and received a January 25, 2006, hearing before an ALJ.  (Tr.

---

[1]  Fielding filed a previous application for disability in May 2003.  (Tr. 13).  However, that application was denied on June 24, 2004, by an Administrative Law Judge ("ALJ").  *Id*.  The Appeals Council denied further review on August 6, 2004.  *Id*.  The instant ALJ declined to reopen the prior application.  *Id*.  Thus, the current application addresses the period between the date of the prior denial through the date of the instant ALJ's decision (June 25, 2004 - October 20, 2006).  *Id*.

338-372).[2]  However, in an October 20, 2006, written decision, the ALJ determined that Fielding was not disabled under the Act, finding at Step Five of the sequential evaluation process that he retained the residual functional capacity to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 10-20).  Fielding appealed the adverse decision to the Appeals Council.  However, on January 19, 2007, the Appeals Council denied Fielding's request for review, and thus the ALJ's decision became the final decision of the Commissioner.(Tr. 3, 4-5).

On March 1, 2007, Fielding sought review before this court.  He alleges the following errors:

(1)      the ALJ erred in finding that plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Social Security Regulations No. 4;

(2)      the ALJ's credibility determination was erroneous; and

(3)      the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.

---

[2]  A supplemental hearing was held on July 27, 2006, so that plaintiff could cross-examine a consultative physician, John J. Ferrell, M.D.  (Tr. 329-337).

2

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

3

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*,  239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

Issues 1-2:

The ALJ found at Step Two of the sequential evaluation process that Fielding suffered

4

from severe impairments of degenerative disc disease, history of left tibia/fibula fracture, status

post reduction with intramedullary rod.  (Tr. 16).  However, the ALJ concluded that the

impairments were not severe enough to meet or medically equal any of the impairments listed in

the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4.  (Tr.

17).

Plaintiff contends that his impairments equal Listing 1.02 and/or meet Listing 1.03.

Those sections provide:

> **1.02** Major dysfunction of a joint(s) (due to any cause): Characterized by gross
> anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pain and stiffness with signs of limitation of motion
> or other abnormal motion of the affected joint(s), and findings on appropriate
> medically acceptable imaging of joint space narrowing, bony destruction, or
> ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or
> ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
>           *               *            *
>
> **1.03** Reconstructive surgery or surgical arthrodesis of a major weight-bearing
> joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to
> effective ambulation did not occur, or is not expected to occur, within 12 months
> of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1.02 and 1.03 (in pertinent part).

To establish that a claimant's injuries meet or medically equal a Listing, the claimant must

provide medical findings that support all of the criteria for a listed impairment (or most similarly

listed impairment).  *See, Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).  An impairment

that manifests only some of the requisite criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990).  If the plaintiff fails to

demonstrate the specified medical criteria, the court will find that substantial evidence supports

the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620.  If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established if the claimant has other findings related to the impairment that equal or exceed the required criteria for the listed impairment.  20 C.F.R. § 404.1526(b)(1). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record.  20 C.F.R. §§ 404.1526(c), 416.926(c) (2006).[3]

With respect to Listing 1.02, the instant ALJ found that the medical records did not establish "'gross anatomical deformity' with associated symptoms and inability to ambulate effectively."  (Tr. 17).  Plaintiff does not suggest that he suffers from a "gross anatomical deformity" as contemplated under Section 1.02.  (Pl. Memo., pgs. 10-11).  Rather, he argues that his left knee and ankle impairment equals Listing 1.02 because the severity of his ineffective ambulation is medically equivalent to an impairment involving gross anatomical deformity.  *Id*.

To ambulate effectively under the regulations, a claimant must be capable of sustaining a reasonable walking pace over a sufficient distance to carry out activities of daily living. 20 C.F.R. § 404, Subpart P, Appendix I, Listing 1.00B2b.  At the hearing, plaintiff testified that he used a cane, and that he could walk for perhaps a minute.  (Tr. 361-362).  However, the ALJ found that Fielding's statements regarding the intensity, persistence, and limiting effects of his symptoms

---

[3]  The regulations formerly provided that medical equivalence was determined from medical evidence only. 20 C.F.R. § 416.926(b) (2006).  However, the Commissioner recently explained that despite the change in the regulation, they have always interpreted "medical evidence" to include not just findings from medical sources, but also other information, including the claimant's own testimony.  71 FR 10431 (3/1/2006).

were not entirely credible.  (Tr. 18).[4]  Rather, the ALJ relied upon the objective medical evidence and the impressions of the examining orthopedic physicians.  For instance, in February 2006, consultative examiner, John J. Ferrell, M.D., observed that Fielding walked with a *mild* antalgic gait, and noted that his knee was stable, with no effusion.  (Tr. 209-210).  Dr. Ferrell further opined that Fielding could stand and walk for at least two hours during an eight hour day.  (Tr. 212-215).  Moreover, on February 10, 2006, plaintiff's treating physician, Dr. Gati, indicated that Fielding's knee had a full range of motion, and his ankle exhibited only a slightly decreased range of motion.  (Tr. 310).[5]

The cited medical opinions provide substantial evidence to support the ALJ's determination that plaintiff does not suffer an inability to ambulate effectively.  The foregoing finding combined with an absence of any demonstrated gross anatomical deformity or lack of any significant limitation of motion confirm the ALJ's determination that plaintiff's impairment did not meet or otherwise medically equal Listing 1.02.[6]

---

[4]  When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p.  The ALJ is also obligated to consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4).  Nonetheless, the ALJ is not bound by formalistic rules in his credibility assessment.  *See, Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

[5]  During a November 20, 2004, evaluation with Mohammad Burney, M.D., plaintiff refused to flex his left knee and declined to toe walk or to tandem walk  (Tr. 131-133).  He further stated that he could not squat.  *Id*.  Despite plaintiff's self-professed limitations, Dr. Burney opined that Fielding could stand for one to two hours and walk two to five blocks with routine breaks.  *Id*.  Moreover, within three months after this evaluation, plaintiff returned to his past relevant work as a tree cutter where he was required to walk and stand for eight hours per day.  (Tr. 97, 347-348, 368).  These events further undermine plaintiff's credibility.

[6]  The ALJ did not directly address Listing 1.03.  However, as with Section 1.02, at least one critical component of Section 1.03 is missing here:  an inability to ambulate effectively.  *See*,

Issue 3:

The ALJ next determined that Fielding retained the residual functional capacity to perform a full range of sedentary work.  (Tr. 17).[7]  The ALJ's residual functional capacity assessment is supported by the opinions of plaintiff's treating physician, Dr. Gati, and the consultative examiner Dr. Ferrell.  (Tr. 310, 209-215).[8]  Plaintiff contends that the doctors may not have been familiar with the SSA definition for "sedentary" when they rendered their opinions.  However, Dr. Ferrell completed a medical source statement on a form provided by the Commissioner.  (Tr. 212-215).  Moreover, if plaintiff's former counsel harbored any doubts concerning Dr. Ferrell's understanding of the requirements of sedentary work, he certainly could have so questioned him during the supplemental hearing that was convened at counsel's request to cross-examine Dr. Ferrell.  (Tr. 229-237).

Plaintiff further complains that the ALJ failed to credit his complaints of dizziness and sleepiness.  (*See*, Tr. 358). However, these symptoms are not documented in the medical record,

_____

discussion, *supra*.  Thus, although the ALJ failed to refer to Listing 1.03, plaintiff has not demonstrated that his "substantial rights" were affected by the ALJ's omission.  *Contrast, Audler v. Astrue*, ___ F.3d ___, 2007 WL 2745001 (5th Cir. 9/21/07).

[7] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[8] Indeed, the ALJ gave controlling weight to the opinions of these two orthopedic surgeons.  (Tr. 18).

and the examining physicians did not assign any resulting limitations.[9]  In short, the ALJ found the assessments of the examining orthopedic surgeons to be more credible and reliable than plaintiff's self-imposed limitations.  The ALJ's credibility and residual functional capacity determinations are supported by substantial evidence.  Likewise, the undersigned finds that the Commissioner's decision as a whole is supported by substantial evidence and is free of legal error.  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

---

[9]  Plaintiff also emphasizes that if his limitations included the inability to stoop, crouch, crawl, kneel, balance or climb, then according to the vocational expert, he could only perform the job of surveillance system monitor which arguably does not exist in substantial numbers in this region.  (Pl. Memo., pg. 11).  However, of the foregoing postural activities, Dr. Ferrell substantiated solely the inability to climb, which does not significantly erode the occupational base for sedentary work.  *See*, SSR 96-9p.  Accordingly, the ALJ properly relied on the medical-vocational guidelines at Step Five of the sequential evaluation process.  (Tr. 19-20).

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 1st day of October, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE